## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER J. DAVIS, | : |
| Petitioner, | : |
| | : |
| v. | :     Civ. Act. No. 06-421-JJF |
| | : |
| RICHARD KEARNEY, Warden, | : |
| and CARL C. DANBERG, Attorney | : |
| General for the State of Delaware, | : |
| | : |
| Respondents. | : |

### ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In May 2005, the petitioner, Christopher J. Davis, was arrested and subsequently charged by information with second degree arson, driving under the influence of alcohol or drugs ("DUI"), offensive touching, terroristic threatening, four counts of criminal mischief, disorderly conduct, resisting arrest, and carrying a concealed deadly instrument. *See* B1, Item 15; B4-7.[1] After a contested violation of probation ("VOP") hearing on July 7, 2005, the Delaware Superior Court found Davis in violation of the terms of his probation. *See* B1, Item 15. Davis then pled guilty to reckless burning, a lesser-included offense of arson; DUI (4th offense); offensive touching; and terroristic threatening. B2, Items 15-16; B48-51. Davis was immediately sentenced to a total of six years and seven months of incarceration, suspended after six months and the successful completion of the Key Program for one year of Level IV residential substance abuse treatment, suspended in turn after successful completion of the program for one year at

---

[1] References to "B" refer to the State's Appendix filed in *Davis v. State*, Del. Supr. Ct., No. 597, 2005.

Level III probation. B52-57. At the same time, Davis was sentenced to 54 days of time served for his VOP and discharged from that probation as unimproved. B84-86. The remaining charges were dismissed. B2, Item 16. Davis did not appeal from his guilty plea or sentence.

On September 2, 2005, Davis moved *pro se* for postconviction relief under Superior Court Criminal Rule 61. B2, Item 19; B58-61. After receiving an affidavit from defense counsel (B62-86), the Superior Court denied the motion on November 9, 2005. B3, Item 28; B89-92. Davis appealed, and the Delaware Supreme Court affirmed the judgment of the Superior Court. *Davis v. State*, 2006 WL 1640348, *1 (Del. June 12, 2006). Davis's federal habeas petition is dated June 25, 2006. D.I. 2.

<u>Facts</u>

According to the testimony at the contested VOP hearing on July 7, 2005, Davis had several encounters with police in the spring of 2005. On March 26, 2005, Davis was illegally stopped on the road in a car without proper registration or a muffler. B13-14. On May 1, 2005, Davis was stopped as he was driving a car believed to have been involved in a shoplifting. B16a-17. The police officer discovered approximately 1.7 grams of crack cocaine in Davis's backpack. B17-18. Then, in the early morning hours of May 15, a Dewey Beach police officer attempted to stop Davis because Davis's car was straddling the center line of State Route 1. B21; B34. Davis failed to stop in response to the officer's activated lights and siren, and he was backing his car in a driveway when the officer went up and banged on the hood of Davis's car. B22-23. The officer smelled alcohol and conducted several field sobriety tests on Davis. B24-27. After failing the tests and refusing to perform another, Davis sat on the hood of the patrol car and refused to get off when directed to do so. B27-28. The officer grabbed Davis's arm and removed him from the vehicle. B28. Two additional officers assisted to handcuff Davis and

place him in the patrol car. B29. Davis kicked out the right rear window of the patrol car and bit another officer's uniform. B29-30. Davis was taken to Beebe Hospital.

On the way to the police station from the hospital, Davis told the officer that he was going to kill him. B32. Later that morning, officers smelled smoke near the cell where Davis was housed, and they saw a burn mark on the cell bench and a blue Bic lighter that had been exploded on the cell floor. B31. Davis was the only occupant of the cell. B32. The officers also observed that Davis's watch had been "jimmied rigged" in an attempt to loosen the grate over the cell window. B32.

Discussion

In his petition for federal habeas relief, Davis raises two grounds for relief: (1) he was denied effective assistance of counsel because counsel misinformed Davis regarding the consequences of the plea and counsel broke lawyer/client confidentiality by speaking to Davis's mother, thereby causing his plea to be coerced and involuntary; and (2) his counsel provided ineffective assistance because he failed to meet with Davis prior to July 5, 2006 and counsel failed to conduct any pre-trial investigation. D.I. 2 at 5. Davis has presented his claims for relief to the Delaware Supreme Court on appeal from the denial of his postconviction motion, thus exhausting his claims. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Davis's claims, however, do not provide a basis for relief.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). "A state court decision is contrary to Supreme Court precedent under § 2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (citations and internal quotations omitted). A state court decision is an unreasonable application if the court identifies the correct governing legal rule based on Supreme Court precedent but unreasonably applies it to the facts of the particular case. *Id.* (citations omitted). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state

4

court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In *Strickland*, the United States Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id.* at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. See *Strickland*, 466 U.S. at 687. In order to demonstrate prejudice in the case of a guilty plea, the petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty, but would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this case, the Delaware state courts correctly identified the two-prong *Strickland/Lockhart* standard applicable to Davis's ineffectiveness claims. Thus the state supreme court's denial of the claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406; *Jacobs*, 395 F.3d at 100.

5

Moreover, the state courts reasonably applied the rule to the specific facts of Davis's case. *See* 28 U.S.C. § 2254(d)(1). Reading Davis's federal habeas petition in conjunction with his state court filings,[2] Davis claims that his counsel failed to communicate with him, failed to conduct a pre-trial investigation, misinformed him about the length of the Key Program, misinformed him about when he would be able to enter the Key Program, misinformed him about how his time served would be applied to his sentence, and violated attorney-client privilege by communicating with his mother. D.I. 2 at 5; *see generally* Opening Brief in *Davis v. State*, Del. Supr. Ct., No. 597, 2005. The state supreme court, analyzing the claims under the *Strickland/Lockhart* framework, held that Davis could not establish any prejudice. *Davis*, 2006 WL 1640348 at ¶5. That decision was certainly a reasonable application of United States Supreme Court precedent.

Davis asserts that his counsel did not contact him, despite requests to do so, prior to July 5, 2005; at that point, defense counsel presented Davis with a plea offer from the State. Davis contends that he had no discussion with his counsel beyond rejecting the plea offer. Further, Davis claims that he was not informed that the July 7 court appearance was a contested VOP hearing rather than a jury trial on his newest charges. Davis alleges that his counsel was not prepared for the VOP hearing, having failed to discuss anything with Davis beforehand. Following the hearing, Davis asserts that he agreed to the State's plea offer only because defense counsel assured him that the Key program would only be six months long and that Davis would receive credit for the two months he had been in prison, effectively reducing his Level V time to four months.

Defense counsel, in his affidavit submitted to Superior Court, explained that he was appointed to represent Davis on May 11, 2005, while counsel was on vacation. Upon his return

---

[2] *See DeShields v. Snyder*, 829 F. Supp. 676, 678 n. 1 (D. Del. 1993).

to work, counsel had a scheduling conflict with Davis's next scheduled court appearance in June, requiring a rescheduling for July 5, 2005. B62. At that time, Davis entered pleas of not guilty and the contested VOP hearing was scheduled for two days later. Counsel stated that he discussed a plea offer with Davis and informed Davis that the VOP hearing would be on July 7th. B62. Defense counsel indicated that halfway through the VOP hearing, Davis expressed an interest in pursuing a plea agreement. B62. Counsel then informed Davis that he would be required to serve a minimum of six months in prison, but that counsel would attempt to get Davis credit for time served against those six months. B62. Counsel also stated in his affidavit that he recalled telling Davis that the Key program was at least six to twelve months long, depending on compliance. B63.

The Superior Court, considering Davis's claims, found defense counsel's recollection of events more credible than Davis's. B91 ("I find your recollection of the events of July 2005 is not as credible as that of your attorney."). The record, including defense counsel's affidavit, supports the Superior Court's finding that counsel's recollection was more credible than Davis's version of events. B91. The court found that Davis was fully aware that the hearing was a VOP hearing and not a jury trial because Davis had been present when the hearing was scheduled. *See* B90; B91. Moreover, the judge noted that he stated at sentencing that Davis could not get through the Key program in six months. B91; *see* B43. Although defense counsel and the prosecutor recommended that Davis's VOPs be discharged, the court elected to impose the 54 days of time served on the VOPs before discharging Davis as unimproved, rather than crediting those days against the six months mandatory time for the DUI (4th offense). B63; B90. In addition, the Superior Court correctly found that Davis's complaint that defense counsel breached the attorney-client privilege had no bearing upon the voluntariness of the plea. B91. Ultimately,

7

the court found that Davis knew he faced a possible seven years in prison under the plea agreement; any contention that the only reason Davis entered the guilty plea was due to his counsel's representation that the Key program was six months in length was thus without merit. B91. On appeal, the Delaware Supreme Court found that "Davis has presented no evidence to support his claim that but for unprofessional errors on the part of his counsel he would not have pleaded guilty and would have insisted on proceeding to trial." *Davis*, 2006 WL 1640348 at ¶5. Neither Davis's state court filings nor his habeas petition indicate how his decision to plead guilty was affected by his counsel's failure to investigate, misinformation, or counsel's communication with Davis's mother. *See Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987); *Knox v. Carroll*, 2005 WL 3271655, *6 (D. Del. Nov. 30, 2005).

Defense counsel reported that Davis expressed interest in pleading guilty during the course of the contested VOP hearing. B62. At that point, Davis had had the opportunity to hear a preview of the evidence the prosecution would present against him at trial. *See* B10-36. In light of the overwhelming evidence against him, it is not surprising that Davis would entertain a plea offer. The judge allowed Davis and his attorney an opportunity to explore a possible plea agreement after the VOP hearing. B37-38. At the plea colloquy, Davis thanked the judge for that opportunity. B41. During the lengthy plea colloquy, Davis assured the court that he was satisfied with his attorney and that he was not forced or threatened in any way. B40. *See Mitchell v. United States*, 526 U.S. 314, 322 (1999) ("statements or admissions made during the preceding colloquy are later admissible against the defendant."). A defendant's statements made during the plea colloquy are presumed to be true. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir. 1991). Such statements constitute a formidable barrier to subsequent collateral proceedings. *Blackledge*, 431 U.S. at 73-74;

*Patterson v.* Carroll, 2006 WL 891142, *6 (D. Del. Apr. 5, 2006). Davis has offered no clear

and convincing evidence to rebut his statements that he understood and voluntarily entered into

the plea agreement. *Blackledge*, 431 U.S. at 73-74; *Patterson*, 2006 WL 891142 at *6. "Mere

allegations by a defendant that he would have ple[d] differently and insisted on going to trial are

insufficient to establish prejudice." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000); *Elliott v.

Kearney*, 2004 WL 724958, *4 (D Del. Mar. 31, 2004). Thus, regardless of his counsel's

deficiencies and alleged misinformation, Davis is bound by his statements made during the plea

colloquy and his answers on the Truth-In-Sentencing form. *See Elliott*, 2004 WL 724958 at *4.

In fact, Davis received a benefit from the plea agreement: rather than facing the

possibility of a sentence of more than nine years in prison on all the charges against him, Davis

received a prison sentence that was suspended after only six months and completion of the Key

program. The Delaware Supreme Court, finding that Davis had presented no evidence to support

his claim he would not have pled guilty if the he had known that the Key program was longer

than six months, and in light of the clear benefit Davis derived from the plea agreement, rejected

Davis's ineffective assistance of counsel claims. *Davis*, 2006 WL 1640348 at ¶5. Because Davis

was clearly not prejudiced by any act or failure to act of his trial counsel, the state court's

rejection of this claim was a reasonable application of United States Supreme Court precedent.

*See Lockhart*, 474 U.S. at 59.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Davis's

contested violation of probation hearing, plea colloquy, and sentencing on July 7, 2005 have

been prepared. In the event that the Court directs the production of any transcript, respondents

cannot state with specificity when such transcript would be available. However, respondents

reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court. Defense counsel's affidavit in response to petitioner's claims of ineffective assistance of counsel can be found in the State's Appendix filed in *Davis v. State*, Del. Supr. Ct., No. 597, 2005, at B62-64.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date: November 6, 2006

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
James KNOX, Petitioner,
v.
Thomas CARROLL, Warden, Respondent.
**No. Civ.A. 03-1166GMS.**

Nov. 30, 2005.
James Knox, petitioner, pro se.

Loren C. Meyers, Chief of Appeals Division,
Delaware Department of Justice, Wilmington,
Delaware, for respondent.

MEMORANDUM OPINION

SLEET, J.

I. INTRODUCTION

*1 Petitioner James Knox ("Knox") is an inmate at
the Delaware Correctional Center in Smyrna,
Delaware. He has filed the pending petition for a writ
of habeas corpus ("petition") pursuant to 28 U .S.C. §
2254. (D.I.2.) For the reasons that follow, the court
will dismiss his petition.

II.    FACTUAL    AND    PROCEDURAL
BACKGROUND

In September 2000, a Kent County grand jury
indicted Knox for the offenses of first degree
unlawful sexual intercourse (11 Del. C. Ann. § 775)
and endangering the welfare of child (11 Del. C.
Ann. § 1102(a)(1)(a)). The charges stemmed from
Knox's sexual intercourse in April and May of 1997
with his then nine-year-old stepdaughter. As
recounted in the police reports, the abuse came to
light in late July 2000.

In February 2001, Knox, with the assistance of
counsel, pled guilty to the lesser included offense of
second degree unlawful sexual intercourse. The plea
agreement was entered pursuant to the provisions of
Delaware Superior Court Criminal Rule 11(e)(1)(c).
(D.I. 14, State's Motion to Affirm in *Knox v. State,*
No. 150,2003, at 2.) The Superior Court sentenced

him to twenty years at Level V imprisonment,
suspended after the ten year minimum mandatory
term for an additional ten years of decreasing levels
of probation.

Knox did not file a direct appeal from his February
2001 conviction and sentence. He did, however, file a
*pro se* motion for post-conviction relief pursuant to
Delaware Superior Court Criminal Rule 61 ("Rule 61
motion"). His Rule 61 motion, and an amended Rule
61 motion, asserted one claim of ineffective
assistance of counsel and five additional claims of
legal error. After Knox's defense counsel filed a
response to the allegations, a Superior Court
Commissioner recommended denial of the motion.
The Superior Court adopted the Report and
Recommendation in February 2003. *State v. Knox,*
2003 WL 751182 (Del.Super.Ct. Feb. 26, 2003).
Knox appealed, and the Delaware Supreme Court
affirmed the Superior Court's denial of the Rule 61
motion. *Knox v. State,* 826 A.2d 298 (Table), 2003
WL 21456287 (Del. June 17, 2003).

In December 2003, Knox filed in this court a petition
for the writ of habeas corpus, raising seven claims for
relief. (D.I.2.) The State filed an answer, asking the
court to dismiss the petition because five claims do
not warrant relief under § 2254(d)(1), one claim is
procedurally barred, and one claim is not cognizable
on federal habeas review. (D.I.11.) Knox filed a
response challenging the State's arguments on
substantive grounds and also alleging that his
procedural default of one claim was due to his
misunderstanding of the Truth in Sentencing form.
(D.I.15.)

Knox's petition is ready for review.

III. GOVERNING LEGAL PRINCIPLES

A. The Antiterrorism and Effective Death Penalty
Act of 1996

Congress enacted the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA") "to reduce
delays in the execution of state and federal criminal
sentences ... and to further the principles of comity,
finality, and federalism." *Woodford v. Garceau,* 538
U.S. 202, 206 (2003)(internal citations and quotation
marks omitted). Pursuant to AEDPA, a federal court
may consider a habeas petition filed by a state
prisoner only "on the ground that he is in custody in
violation of the Constitution or laws or treaties of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

Page 2

United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

B. Exhaustion and Procedural Default

*2 Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844-45; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F .3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). " 'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.' " *Holloway v. Horn,* 355 F.3d 707, 714 (3d Cir.2004)(citing *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague*

*v. Lane,* 489 U.S. 288, 297-98 (1989). Although the failure to exhaust state remedies may be excused, unexhausted claims are still procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

*3 Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States,* 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir.2002).

C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res jvdicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard,*--U.S.--, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

## IV. DISCUSSION

Knox asserts the following seven grounds for relief in his petition: (1) defense counsel provided ineffective assistance by: failing to investigate exculpatory information, failing to interview any corroborating witnesses, and erroneously telling petitioner he would receive "early release credits" if he pled guilty; (2) the terms of the plea agreement have not been fulfilled because he is not earning good time credit as envisioned by the language contained in the Truth-in-Sentencing Guilty Plea Form; (3) his confession was coerced; (4) his defense counsel coerced him into entering the plea agreement; (5) his August 2, 2000 arrest was illegal because the statement used to secure the warrant was made during his illegal detention on August 1, 2000; (6) he was denied representation during the August 1, 2000 police interrogation; and (7) the Superior Court abused its discretion in denying his Rule 61 motion without first affording him an evidentiary hearing.

A. Claims one and four: ineffective assistance of counsel

**\*4** In his first claim, Knox asserts the following allegations regarding his counsel's deficient performance: (1) counsel failed to investigate exculpatory information; (2) counsel failed to interview any corroborating witnesses; and (3) counsel erroneously told petitioner that he would receive "early release credits" if he pled guilty. Knox's fourth claim asserts that his counsel's ineffectiveness coerced his guilty plea, that his counsel threatened him, and that his counsel told him the wrong trial date, causing him to believe he had to accept the plea agreement or it would be "too late."

The record reveals that Knox exhausted state remedies for these ineffective assistance of counsel allegations by presenting them to the Delaware Supreme Court in his post-conviction appeal. The Delaware Supreme Court denied these claims as meritless. Therefore, the court must apply the deferential standard provided by § 2254(d)(1) and determine whether Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

The "clearly established Federal law" which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith,* 539 U.S. 510 (2003). To prevail on a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must demonstrate both that: (1) counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms; and (2) counsel's deficient performance actually prejudiced the petitioner's case; in other words, there is a reasonable probability that, but for counsel's faulty performance, he would have decided to proceed to trial. *Hill v. Lockhart,* 474 U.S. 52, 57, 59 (1985); *Strickland,* 466 U.S. at 690; *Dooley v. Petsock,* 816 F.2d 885, 891-92(3d Cir.1987). In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them · or risk summary dismissal. *See Wells v. Petsock,* 941 F.2d 253, 259-260; *Dooley,* 816 F.2d at 891-92. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland,* 466 U.S. at 689.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

Page 4

Here, the Delaware Supreme Court identified *Strickland* as the appropriate standard to apply and concluded that the Superior Court did not err in finding that Knox had failed to satisfy the two-part test in *Strickland*. *Knox*, 2003 WL 21456287, at * *2. Consequently, the state supreme court's denial of Knox's ineffective assistance of counsel claims was not "contrary to" clearly established Federal law. *Williams*, 529 U.S. at 406 (holding that when a "run-of-the-mill state-court decision applie[s] the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case," the decision is not "contrary to" that precedent).

*\*5 The court must also determine whether the state court's rejection of Knox's ineffectiveness claims involved an "unreasonable application of" *Strickland*. *See* 28 U.S.C. § 2254(d)(1). "The unreasonable application test is an objective one--a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir.2005)(citing *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)). Rather, a federal habeas court must objectively evaluate the state court decision on the merits and determine whether the state court reasonably applied the correct rule to the specific facts of the petitioner's case. *See Williams*, 529 U.S. at 409, 412- 13; *Matteo*, 171 F.3d at 891.

Knox's first two interrelated allegations are that his counsel failed to investigate exculpatory information and interview any corroborating witnesses. When a petitioner alleges his counsel provided ineffective assistance by failing to interview or investigate a potential witness, he must identify the potential witness and indicate the type of testimony to be obtained from such witness. *See, e.g., Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991); *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir.1990). Here, Knox's Response to the State's Answer contends that his other five children were potential witnesses who could have refuted the statement made to the police by the victim's brother (Knox's step-son). (D.I. 14, Op. Br. in *Knox v. State*, No. 150,2003, at 14.) His brief also asserts that he "stated to counsel that he was not the perpetrator the defendant [sic] other children were the only potential witnesses who could have offered contradictory testimony to [the victim's] statement. These witnesses also had the potential to corroborate facts given to [counsel] by the defendant." *Id.*

The state record includes statements made to the police by Knox, the victim, the victim's brother, and Knox's wife. In his statement, Knox denied having sexual intercourse with his step-daughter, but described several incidents where the girl allegedly initiated sexual contact with him. He also told police of one brief episode of fellatio with his step-daughter, but he claimed that he had only engaged in the episode while asleep and thinking that it was with his wife; once he woke up and realized he was with his step-daughter, he stopped the sexual contact.

The victim's brother gave a statement to the police describing two incidents. The first incident was recounted to him by the victim, and involved the same incident of fellatio described by Knox. The second incident ("birthday incident") involved the brother's own independent observation of a time when his step-father "took the victim into a bedroom and told the other kids to stay out because he wanted to talk to the victim about her upcoming birthday. [The brother] recalled that the victim went into the bedroom with a purple shirt and came out wearing a pink shirt. He later asked her about the shirt and she told him that she threw up when the defendant made her suck his dick." (D.I. 14, Appendix to Appellant's Op. Br. in *Knox v. State*, No. 150, 2003, Statement of Witness 003.)

*\*6 The victim's statement to the police recounted several instances of sexual contact with Knox, including the birthday incident described by her brother. *Id.* at Statement of Victim 001.

Knox believes that his five children would have contradicted his step-son's police statement regarding the birthday incident. However, Knox does not explain whether these witnesses would have stated that Knox and the victim never entered a bedroom alone, or whether they would have stated that the victim did not exit the bedroom in a shirt different from the one she was wearing when she first entered the bedroom. Further, in his Rule 61 affidavit, Knox's attorney provided letters demonstrating Knox's "bizarre" and self-serving stories offered in an attempt to prove his non-involvement in the sexual abuse incidents. (D.I. 14, State's Motion to Affirm in *Knox v. State*, No. 150,2003, Exh. 1.) Given the three credible statements given to the police by the victim, her brother, and Knox himself, Knox's attorney could reasonably have believed that interviewing Knox's five children would not have proven fruitful.

Further, Knox has not satisfied the prejudice prong of *Strickland* and *Hill*. Neither his state court filings nor his habeas petition indicate how his decision to plead guilty was affected by his counsel's failure to

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

question the potential witnesses or investigate the possible exculpatory evidence. *See Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir.1987). In fact, Knox stated on the Truth-in-Sentencing ("TIS") Guilty Plea Form and during his plea colloquy that he entered his plea voluntarily and that he was satisfied with his counsel's performance. He also answered affirmatively when the Superior Court judge asked if he was, in fact, guilty of the charge. These statements were made in open court, and indicate Knox's satisfaction with his counsel's performance. *See Mitchell v. U.S.,* 526 U.S. 314, 322 (1999)("statements or admissions made during the preceding colloquy are later admissible against the defendant."). As stated by the United States Supreme Court:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977). Thus, the Delaware Supreme Court did not unreasonably apply *Strickland* and *Hill* in denying Knox's ineffective assistance of counsel claims regarding his counsels failure to investigate exculpatory evidence or interview potential corroborating witnesses.

Knox also claims that defense counsel erroneously told him that he could receive good time credits to reduce his minimum mandatory ten year sentence. Although an attorney's failure to adequately inform the defendant about considerations relevant to his decision to accept or deny the plea agreement can constitute deficient performance, *see Davis v. Greiner,*--F.3d -, 2005 WL 2500690, at *6 (2d Cir. Oct. 11, 2005), the record refutes Knox's assertion.

*7 During the plea colloquy, defense counsel stated to the court that he had informed Knox that no good time credit was available on the ten year minimum sentence. During the same colloquy, Knox told the judge that he understood the charge carried a ten year minimum mandatory sentence. Thus, even if defense counsel misstated the availability of good time credits, this mistake was corrected during the plea colloquy. *See United States v. Thomas,* 470 F.Supp. 968, 971 (E.D.Pa.), *aff'd,* 612 F.2d 575 (3d Cir.1979)(Table).

Knox, however, argues that the statements made during the plea colloquy contradict the statements contained in the TIS guilty plea form. This argument is without merit and does not help his position. The TIS guilty plea form only advises the defendant that there is no parole and that he can *earn no more than* ninety days of "early release credit" each year; it does not state that he is *entitled to* "early release credit." (emphasis added)

Knox further contends that defense counsel "coerced" him into pleading guilty. However, simply advising a defendant to plead guilty is not coercion; an attorney's function is "to persuade his client to take that course which, to the attorney, in the light of his experience, appears to be the wisest." *Devers v. People of State of California,* 422 F.2d 1263, 1264 (9th Cir.1970). Here, if Knox had proceeded to trial, he could have received a life sentence for first degree unlawful sexual intercourse. *See* 11 Del. C. Ann. § 775, 4205(b)(1)(Repl.1995)(first degree unlawful sexual intercourse classified as class A felony punishable by fifteen years to life). Knox himself never alleges that there was any chance of acquittal. By pleading guilty, Knox received a ten year prison sentence, and other charges (filed in Kent and Sussex counties) were dropped. [FN1] Because the difference between life imprisonment and a ten-year term is substantial, recommending a plea in this situation appears to have been the "wisest choice." Thus, the Delaware Supreme Court did not unreasonably apply *Strickland* or *Hill* in denying this claim.

> FN1. Charges of witness tampering and violation of bond conditions were filed in Kent and Sussex counties. (D.I. 11, at 2.)

Finally, Knox's assertions regarding his counsel's alleged threats are conclusory and unsupported. Further, he has not provided concrete support demonstrating that he would not have pled guilty if not for his counsel's alleged threats and misinformation about his trial date. *See Wells v. Petsock,* 941 F.2d 253, 259-260; *Dooley,* 816 F.2d at 891-92 (holding that a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal of his ineffective assistance of counsel claim). Thus, the court will dismiss this claim for failing to overcome the "strong presumption that the representation was professionally reasonable." *Strickland,* 466 U.S. at 689.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
(Cite as: 2005 WL 3271655 (D.Del.))

**B. Claim two: terms of the plea agreement**

In his second claim, Knox contends that he is not earning good time credit as envisioned by the language on the TIS guilty plea form. Knox exhausted state remedies by presenting this claim to the Delaware Supreme Court on appeal from the denial of his Rule 61 motion. Nevertheless, the State contends that federal habeas review is precluded because the Delaware state courts rejected the claim on an independent and adequate state procedural ground.

**\*8** The court agrees that it is procedurally barred from reviewing this claim on the merits. The Superior Court explicitly found the claim procedurally defaulted under Delaware Superior Court Rule 61(i)(3). *Knox,* 2003 WL 751182, at \*1 (Knox did not assert the claim at the plea, sentencing, or on direct appeal, and because he failed to demonstrate that his counsel provided ineffective assistance, he did not establish cause or prejudice excusing his procedural default). The Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of the Superior Court's order." *Knox,* 2003 WL 21456287, at \* \*2 (Del. Jun. 17, 2003). The Delaware Supreme Court did not mention Knox's claim regarding the terms of the plea agreement. Nevertheless, absent proof that the state supreme court reached the merits of this claim, the court is bound to presume that the Delaware Supreme Court's unexplained decision rested on the same procedural default grounds as the Superior Court's decision. *See Ylst v. Nunnemaker,* 501 U.S. 797, 805 (1991); *Hull v. Freeman,* 991 F.2d 86, 89 (3d Cir.1993)("[U]nder *Ylst,* a federal court faced with an unexplained state court order should 'look through' to the previous state court judgment on the same claim and presume that the unexplained order rests on the same ground as that judgment"). Consequently, the court presumes that the Delaware Supreme Court denied the instant claim as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3).

The dismissal under Rule 61(i)(3) constituted a plain statement that the courts' decisions rested on state law grounds. *Harris v. Reed,* 489 U.S. 255, 263-65 (1989); *see Ylst v. Nunnemaker,* 501 U.S. 797 (1991). This court has consistently held that Delaware Superior Court Criminal Rule 61 is an independent and adequate state ground precluding federal habeas review. *See Maxion v. Snyder,* 2001 WL 848601, at \*10 (D.Del. July 27, 2001)(all sub-parts of Rule 61 constitute independent and adequate state procedural grounds); *Dawson v. Snyder,* 988 F.Supp. 783, 804

(D.Del.1997), *rev'd on other grounds by Dawson v. Snyder,* 234 F.3d 1264 (3d Cir.2000). As such, the court cannot provide federal habeas review of this claim unless Knox establishes cause for his procedural default and actual prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to review this claim. *See* 28 U.S.C. § 2254(a); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 860-61 (3d Cir.1992).

Knox appears to assert his counsel's ineffective assistance as cause for his procedural default. An ineffective assistance of counsel claim can only establish cause for a procedural default if it is determined that counsel did, in fact, provide constitutionally ineffective assistance. *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986); *Edwards v. Carpenter,* 529 U.S. 446, 451-51 (2000). As previously explained, the court has concluded that Knox's ineffective assistance of counsel claim is meritless. Therefore, counsel's actions do not excuse Knox's procedural default.

**\*9** Knox has not asserted any other cause for his failure to present this claim in his post-conviction appeal. In the absence of cause, the court does not need to reach the question of prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986). Nevertheless, Knox cannot establish prejudice because his contention is baseless. The language of the plea agreement does not promise that Knox *will earn* any good time credits; rather, the language indicates that *if* good time credits can be earned, the credit will be limited to 90 days. [FN2] The TIS guilty plea form, signed by Knox, also states that the minimum mandatory penalty for his sentence is ten years. (D.I. 14, State's Motion to Affirm in Knox v. State, No. 150, 2003, at Exh. E.) In Delaware, a minimum mandatory sentence cannot be reduced by good time credit. *See, e.g., Pleasanton v. State,* 817 A.2d 791, 793 (Del.2003). Thus, Knox was not eligible for good-time credits.

> FN2. The TIS guilty plea form states: "Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year?" (D.I. 14, State's Motion to Affirm in Knox v. State, No. 150, 2003, at Exh. E.) (emphasis added)

Further, during the plea colloquy, defense counsel said that he told Knox a minimum mandatory

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

Page 7

sentence could not be reduced by good time credit. The plea colloquy transcript does not indicate that Knox objected to this statement or that he was confused about the good time credit issue. Because the guilty plea agreement does not contain the terms as alleged by Knox, there is no issue of "nonfulfillment." Thus, Knox has failed to demonstrate prejudice resulting from his procedural default.

Knox also has not demonstrated that a fundamental miscarriage of justice will result from failure to review this claim. Accordingly, the court is procedurally barred from reviewing claim two.

**B. Claims Three, Five, and Six: illegal confession and arrest**

In claims three and six, Knox contends that his confession was coerced and that he was denied representation during his August 1, 2001 police interrogation. Claim five contends that his arrest on August 2, 2001 was illegal because it was based on his illegally obtained statement on August 1, 2001. The State correctly acknowledges that Knox exhausted state remedies for these claims by presenting them to the Delaware Supreme Court in his direct appeal. The Delaware Supreme Court denied these claims as meritless. Consequently, federal habeas relief will not be warranted unless this decision is either contrary to, or an unreasonable application of, clearly settled Federal law as established by the United States Supreme Court. *See* § 2254(d)(1).

The first step in the § 2254(d)(1) inquiry is to determine the clearly established Supreme Court precedent governing the issue at the time of petitioner's conviction. It is well-settled that a "an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty." *Haring v. Prosise,* 462 U.S. 306, 319-20 (1983); *Tollett v. Henderson,* 411 U.S. 258 (1973). A defendant who entered a guilty plea "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]." *Tollett,* 411 U.S. at 267; *see also Hill v. Lockhart,* 474 U.S. 52, 56-8 (1985).

**\*10** Here, the Delaware Supreme Court first determined that Knox's guilty plea was not the product of ineffective assistance of counsel, and then concluded that Knox had waived the right to

challenge his confession and arrest because he had voluntarily and knowingly entered a guilty plea. *Knox,* 2003 WL 21456287, at * *2. This conclusion is neither contrary to, nor an unreasonable application of, *Tollett.* Thus, claims three, five, and six do not warrant habeas relief under § 2254(d)(1).

**C. Claim seven: state post-conviction proceedings**

Knox's final claim is that the Superior Court should not have denied his Rule 61 motion without first affording him an evidentiary hearing. This claim fails to present an issue cognizable on federal habeas review because it alleges an error in a state collateral proceeding. *See Lambert v. Blackwell,* 387 F.3d 210, 247 (3d Cir.2004)("alleged errors in [state] collateral proceedings ... are not a proper basis for habeas relief"); *Hassine v. Zimmerman,* 160 F .3d 941, 954 (3d Cir.1998); *Gattis v. Snyder,* 46 F.Supp.2d 344, 384-85 (D.Del.1999)(citing cases). Thus, the court will dismiss this claim.

**V. CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

The court concludes that Knox's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the court declines to issue a certificate of appealability.

**VI. CONCLUSION**

For the reasons stated, Knox's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)
**(Cite as: 2005 WL 3271655 (D.Del.))**

appropriate order shall issue.

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. James Knox's petition for the writ of habeas corpus, filed pursuant to 28 U.S.C § 2254, is DISMISSED, and the relief requested therein is DENIED. (D.I.1.)

2. The court declines to issue a certificate of appealability.

Not Reported in F.Supp.2d, 2005 WL 3271655 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV01166 (Docket) (Dec. 29, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)
(Cite as: 2006 WL 891142 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Rob L. PATTERSON, Petitioner,
v.
Thomas CARROLL, Warden, Respondent.
**No. Civ.A. 04-102-GMS.**

April 5, 2006.
Rob L. Patterson, petitioner, pro se.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for respondent.

MEMORANDUM OPINION

SLEET, J.

I. INTRODUCTION

**\*1** Petitioner Rob L. Patterson ("Patterson") is an inmate at the Delaware Correctional Center in Smyrna, Delaware. He has filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I.1.) For the reasons that follow, the court will dismiss his petition.

II. FACTUAL AND PROCEDURAL BACKGROUND

In April 2001, while on probation for a previous drug conviction, Patterson was arrested on numerous new drug and weapons charges. Patterson filed a motion to suppress evidence seized by police at the time of his arrest. In September 2001, the Delaware Superior Court conducted a hearing on the motion to suppress. The Superior Court denied the suppression motion, and also found Patterson to be in violation of his probation. The Superior Court immediately sentenced Patterson for the violation of probation to two years of incarceration at Level V, suspended after eighteen months for six months of work release. *See Patterson v. State,* 840 A.2d 642 (Table), 2004 WL 65333, at * *1 (Del. Jan. 12, 2004).

On July 9, 2002, the day that his trial was to commence with respect to the new drug and weapons

charges, Patterson pled guilty to one count of trafficking in cocaine (Del.Code Ann. tit. 11, § 1448 (2001)), and one count of possession of a deadly weapon by a person prohibited (Del.Code Ann. tit. 11, § 1448 (2001)). The Superior Court immediately sentenced him to a total of seven years in prison, suspended after four years for one year of probation. Patterson did not appeal his conviction or sentence.

In November 2002, Patterson filed in the Delaware Superior Court a *pro se* motion for post-conviction relief pursuant to Superior Court Criminal Rule 61. The Rule 61 motion alleged that the State did not fulfill its promise to incorporate Patterson's violation of probation charge and sentence into the plea agreement. The Superior Court summarily denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Patterson,* 2004 WL 65333.

In February 2004, Patterson filed in this court a petition for the writ of habeas corpus. (D.I.2.) The State filed an answer, requesting the court to dismiss the petition, and Patterson filed a response. (D.I. 13; D.I. 16.)

Patterson's petition is ready for review.

III. GOVERNING LEGAL PRINCIPLES

A. Exhaustion and Procedural Default

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> **\*2** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)
(Cite as: 2006 WL 891142 (D.Del.))

ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844-45; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F .3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). " 'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." ' *Holloway v. Horn,* 355 F.3d 707, 714 (3d Cir.2004)(citing *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although the failure to exhaust state remedies may be excused, unexhausted claims are still procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

*3 Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States,* 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir.2002).

B. Standard of Review Under AEDPA

If the highest state court adjudicated the federal habeas claim on the merits, a federal court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). A claim was "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard,* 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

Finally, when reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)
**(Cite as: 2006 WL 891142 (D.Del.))**

applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions. This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

### IV. DISCUSSION

Patterson asserts the following three grounds for relief in his petition: (1) the State unlawfully induced him to enter into a plea agreement and also breached the plea agreement by failing to incorporate his violation of probation charge and sentence into the plea agreement; (2) his conviction was the result of evidence obtained pursuant to an unlawful arrest; and (3) his conviction was the result of illegal profiling by a government agency. (D.I. 1, at 5-6.)

### A. Breach of plea agreement

*\*4 In his first claim, Patterson contends that the State breached its promise to include his violation of probation as part of the plea agreement. Patterson exhausted state remedies for the instant claim by presenting it to Delaware Supreme Court in his post-conviction appeal. *See Smith v. Digmon,* 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984). Therefore, the court must apply the deferential standard provided by § 2254(d)(1) and determine whether the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes)." *Brady v. United States,* 397 U.S. 742, 755 (1970). Consequently, on federal habeas review, a petitioner may only challenge the voluntary and intelligent character of the plea agreement in one of two ways: (1) by showing that counsel's advice with respect to the plea fell below the standards demanded of attorneys in criminal cases, *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also Hill v. Lockhart,* 474 U.S. 52, 56-8 (1985); or (2) in a situation where a guilty plea is induced by promises,

by showing that the defendant did not know the "essence of those promises." *Santobello v. New York,* 404 U.S. 257, 262 (1971). Thus, if the prosecution breaches its promise with respect to an executed plea agreement, then the defendant's conviction cannot stand. *Id.* at 262.

Patterson has submitted copies of his plea agreement and the Truth-In-Sentencing Guilty Plea Form ("TIS") to demonstrate that the plea agreement was breached. Specifically, he contends that the prosecutor crossed out the violation of probation provisions in the agreement after the agreement was signed on July 9, 2002. Patterson presented this claim to the Superior Court in his Rule 61 motion, and the Superior Court judge determined it to be factually baseless:

> I would note that the plea agreement under which you entered your guilty plea reflects that the areas involving the violation of probation have been removed by counsel and initialed by the prosecutor Ms. Woloshin with the plea agreement which was signed by you and Mr. O'Neill. As such, it appears that the parties agreed not to include the violation of probation in resolving the above-referenced charges. This is probably because when I sentenced you on July 10, 2002, you had already been sentenced by Judge Gebelein on September 19, 2001 for the violation of probation charge. As such, it made no sense that the violation of probation would be included in the new plea agreement. The Court had nothing before it other than your word that you were to receive credit for the 18 months given to you by Judge Gebelein. It is not contained in the document, nor have you represented that it was brought to the Court's attention during the plea colloquy.

*\*5 (D.I. 15, *State v. Patterson,* Crim. Id. No. 0105000009, Letter Order (Del.Super.Ct. Jan. 23, 2003)). On post-conviction appeal, the Delaware Supreme Court agreed, explaining that:

> On July 9, 2002, the day his trial was scheduled to start, Patterson entered a guilty plea. During the plea colloquy, Patterson acknowledged that he was pleading guilty to one count each of trafficking and possession of a deadly weapon by a person prohibited, which, together, carried a minimum mandatory sentence of four years imprisonment. There was no assertion by any party that the VOP sentence, which the Superior Court had imposed ten-months earlier, was somehow to be included in the four-year minimum mandatory sentence. In fact, Patterson and his counsel requested the Superior Court to impose minimum probation to follow his four-year minimum mandatory prison

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)
(Cite as: 2006 WL 891142 (D.Del.))

sentence because of the six months probation Patterson already was required to serve following his eighteen-month prison sentence for the VOP. In light of this record, we find no factual basis for Patterson's contention that the State breached its plea agreement.

*Patterson,* 2004 WL 65333, at * *1.

The court has reviewed the record, and concludes that the prosecution did not breach any promise to include the violation of probation charge in the plea agreement because Patterson was aware that the prosecution had revoked that offer almost one full year before the plea agreement was executed. A close examination of the plea agreement form reveals that, although the agreement was originally dated May 24, 2001 and included the violation of probation charge in its terms, the May 24, 2001 date is crossed out, as is the violation of probation charge, and the initials "NW" are included next to the deleted violation of probation terms. The signed agreement contains the date July 9, 2002, indicating that the changes were made on the date of execution, and not afterward. Additionally, the TIS form was clearly executed on July 9, 2002 and does not include a violation of probation charge, indicating that the executed plea agreement did not include the violation of probation charge.

The transcripts of the suppression hearing and Patterson's plea colloquy provide further support for the conclusion that Patterson knew the violation of probation charge was not included as part of his plea. During the September 9, 2001 suppression hearing, the prosecutor made the following statement:
[T]he defendant has Trafficking Charges, and he has a Possession With the intent to Deliver charge that carries a fifteen minimum mandatory. And he also has two Possession of a Deadly Weapon by a Person Prohibited charges, which each have a year minimum mandatory because he has a prior Possession With the intent to Deliver ... The State had offered originally Trafficking and Possession of a Deadly Weapon by a Person Prohibited and a violation of probation, and four years minimum mandatory. We're revoking that offer."

*6 (D.I. 15, App. to Ans. Br. in *Patterson v. State,* No.241, 2003 .) The fact that the prosecutor made this statement between May 24, 2001, when the original plea agreement included the violation of probation charge, and July 9, 2002, when the plea agreement excluding the violation of probation charge was executed, provides strong evidence that the changes to the plea agreement form were made on July 9, 2002, and not thereafter.

Moreover, neither Patterson nor his counsel raised the violation of probation charge during Patterson's plea colloquy on July 9, 2002. During the colloquy, the prosecutor stated that "the defendant is going to plead guilty to Count 1, trafficking in cocaine ... and possession of a deadly weapon by a person prohibited, which is Count 4." (D.I. 15, Plea Colloquy Trans. in *State v. Patterson,* ID No. 0105000009, July 9, 2002, at p. 2.). Both defense counsel and Patterson stated that the court's summary of the agreement was correct, and Patterson explicitly stated that there were no other promises or representations made with respect to the agreement. *Id* . at p.p. 3, 5. The judge also asked Patterson if he had already been found to have violated his probation for the offense in Count 4, and if he had already been sentenced, to which Patterson affirmatively replied "yes." *Id.* at p. 9. When asked if he had anything else to add, Patterson stated "no." *Id.* at p. 12. It is well-settled that representations made at a plea hearing are difficult barriers to overcome, and Patterson has offered no clear and convincing evidence to rebut his statements that he understood and voluntarily entered into the plea agreement. *See Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977); *Thomas v. Snyder,* 2001 WL 1297812 (D.Del. Oct. 3, 2001); *Parke v. Raley,* 506 U.S. 20, 35 (1992).

All of these facts lead the court to conclude that the Delaware Supreme Court reasonably found that the violation of probation was not intended to be included in the July 2002 plea agreement. Without evidence of a breach, the Delaware Supreme Court's rejection of Patterson's breach of plea agreement claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Accordingly, the court will deny the instant claim for failing to warrant habeas relief under § 2254(d)(1).

B. Illegal detention and arrest

In his second and third claims, Patterson contends that the police illegally stopped him due to illegal profiling, that they illegally obtained the drug evidence through an illegal arrest, and that his conviction was unlawful because it was based on the illegal evidence. For the reasons discussed hereafter, Patterson's Fourth Amendment claims are barred by the United States Supreme Court holding in *Stone v. Powell,* 428 U.S. 465 (1976).

In *Stone v. Powell,* 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)
(Cite as: 2006 WL 891142 (D.Del.))

a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. Generally, to avoid the *Stone* bar, a petitioner must demonstrate that he did not have a full and fair opportunity to litigate a Fourth Amendment claim because a structural defect in the state system prevented his claim from being heard. *Marshall v. Hendricks,* 307 F.3d 36, 82 (3d Cir.2002). A petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure. *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir.1978); *Petillo v. New Jersey,* 562 F.2d 903, 906- 07 (3d Cir.1977). Whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis. *Marshall,* 307 F.3d at 82; *Gilmore v. Marks,* 799 F.2d 51, 56 (3d Cir.1986), *cert. denied,* 479 U.S. 1041 (1987).

*7 In the instant situation, Patterson's counsel filed a motion to suppress evidence. The Delaware Superior Court conducted a hearing on September 19, 2001, and denied the motion. *See Patterson,* 2004 WL 65533, at * *1. Therefore, because Patterson had a full and fair opportunity to litigate those claims in the state courts, the *Stone* bar precludes federal habeas relief.

Additionally, "when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise,* 462 U.S. 306, 321 (1983). Here, Patterson's conviction was based on the fact that he pled guilty to two felony charges, not on any allegedly illegally seized evidence. *See Patterson,* 2004 WL 6533, at * *1. Thus, Patterson's Fourth Amendment claims are beyond the scope of federal habeas review. [FN1] *Haring,* 462 U.S. at 322.

> FN1. The State also contends that Patterson procedurally defaulted the claims in state court because he did not present them to the Delaware Supreme Court on direct appeal from his conviction or on post-conviction appeal. The State correctly concludes that Patterson did not demonstrate cause for, or prejudice resulting from, his procedural default. Therefore, the instant claims are

also alternatively barred from Federal habeas review due to Patterson's unexcused procedural default in the state courts.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.

The court concludes that Patterson's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Patterson's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

### ORDER
For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Rob L. Patterson's petition for the writ of habeas corpus, filed pursuant to 28 U.S.C § 2254, is DISMISSED, and the relief requested therein is DENIED. (D.I.1.)

2. The court declines to issue a certificate of appealability.

Not Reported in F.Supp.2d, 2006 WL 891142 (D.Del.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Elliott v. KearneyD.Del.,2004.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Curtis ELLIOTT, Petitioner,
v.
Rick KEARNEY, Warden, Respondent.
**No. Civ.A. 02-205-KAJ.**

March 31, 2004.

Curtis Elliott, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

*1 Petitioner Curtis Elliott is presently incarcerated at
the Delaware Correctional Facility ("D.C.C.") in
Smyrna, Delaware. On March 18, 2002, Elliott filed
an application for a writ of habeas corpus pursuant to
28 U.S.C. § 2254, acting *pro se.* (D.I.1.) He has also
filed a letter motion for the appointment of counsel
and DNA testing, a motion for summary judgment,
and a motion for issuance of the writ pursuant to 28
U.S.C. § 2243. (D.I. 37; D.I. 47; D.I. 55.) For the
reasons set forth below, the Court will deny Elliott's
petition. (D.I.1.) The Court will also deny his
motions as moot. (D.I. 37; D.I. 47; D.I. 55.)

II. PROCEDURAL AND FACTUAL
BACKGROUND

On April 13, 2000, Elliott attacked Desiderio S. Perez
with a knife. Consequently, Elliott was charged by
information in the Delaware Superior Court with four
offenses: possession of a deadly weapon during the
commission of a felony, second degree assault,
possession of a deadly weapon by a person
prohibited, and misdemeanor theft. On October 26,
2000, Elliott, represented by counsel, pled guilty to
second degree assault. In return, the State entered a
*nolle prosequi* as to the remaining three charges.

On December 8, 2000, the Delaware Superior Court
sentenced Elliott to eight years incarceration,

suspended after four years for decreasing levels of
probation. Elliott did not file a direct appeal. *See
Elliott v. State,* No. 270, 2001, Order at ¶ 3 (Del.
Aug. 23, 2001).

On April 17, 2001, Elliott filed his first motion for
state post-conviction relief pursuant to Superior
Court Criminal Rule 61, alleging ineffective
assistance of counsel. (D.I. 13, Ex. G to State's Motion
to Affirm in No. 270, 2001.) The Superior
Court denied the motion on April 27, 2002. Elliott
never appealed. (D.I. 13, Ex. H to State's Motion to
Affirm in No. 270, 2001.)

In May 2001, Elliott filed a second Rule 61 motion.
(D.I. 13, Exs. I and J to State's Motion to Affirm in
No. 270,2001.) The Superior Court denied the
motion, and the Delaware Supreme Court affirmed
this decision on appeal. *See Elliott v. State,* No.
270,2001 (Del. Aug. 23, 2001); (D.I. 13, Ex. A to
State's Motion to Affirm in No. 270,2001.)

The Delaware Superior Court denied Elliott's third
Rule 61 motion. This decision was affirmed on
appeal. *Elliott v. State,* No. 554, 2001 (Del. Feb. 4,
2002).

Currently before the Court is Elliott's petition for the
federal writ of habeas corpus.

III. LEGAL PRINCIPLES GOVERNING
EXHAUSTION AND PROCEDURAL DEFAULT

A federal district court may consider a habeas
petition filed by a state prisoner only "on the ground
that he is in custody in violation of the Constitution
or laws or treaties of the United States." 28 U.S.C. §
2254(a). When seeking habeas relief from a federal
court, a state petitioner must first exhaust remedies
available in the state courts. According to the
Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"):
An application for a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a
State court shall not be granted unless it appears that
-
*2 (A) the applicant has exhausted the remedies
available in the courts of the State; or
(B) (i) there is an absence of available State
corrective process; or
(ii) circumstances exist that render such process

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). However, a state can expressly waive the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(3).

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim was fairly presented to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000). However, if the petitioner raised the issue on direct appeal in the correct procedural manner, then the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1996); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992) (citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines,* 208 F.3d at 160; *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are still considered to be procedurally defaulted. *Lines,* 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255 263 (1989); *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1999); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir.1992).

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

**\*3** Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.2001). In order to demonstrate a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir.2002).

## IV. DISCUSSION

Elliott filed his habeas petition and supporting memorandum on March 18, 2002. [FN1] (D.I. 1; D.I.2.) He contends that his defense attorney provided ineffective assistance of counsel by failing to conduct DNA testing on the "alleged deadly weapon." (D.I. 1 at 5.) The State properly acknowledges that Elliott exhausted state remedies by presenting this argument to the Delaware Supreme Court in his second and third post-conviction appeals. *See* Op. Br. In No. 270, 2002 at 10; *Smith v. Digmon,* 434 U.S. 332, 333 (1978); *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

> FN1. Since then, Elliott has filed numerous documents in support of his petition, either titled as traverses, memoranda in support, or even an amended petition. (D.I.29; D.I. 35; D.I. 38; D.I. 39; D.I. 41; D.I. 44). To the extent these documents merely support and expand the original ineffective assistance of counsel claim, the Court will consider them in its review.

A finding of exhaustion does not end the Court's inquiry, however, because a federal habeas court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

error in a state conviction." *Bond v. Fulcomer,* 864 F.2d 306, 310 (3d Cir.1989). Here, the State asks the Court to dismiss Elliott's petition as procedurally barred by the independent and adequate state law ground of Delaware Superior Court Criminal Rule 61(i)(2). (D.I. 10 at 2-4.)

The procedural default issue arises because Elliott did not raise his current ineffective assistance/DNA argument [FN2] in his first post-conviction motion. Instead, Elliott's first post-conviction motion alleged that his defense counsel provided ineffective assistance of counsel by not raising the issue of a conflict of interest between Elliott and the judge. (D.I. 13, Ex. G & Ex. H to the State's Motion to Affirm in No. 270,2001.) On April 27, 2001, the Superior Court denied this claim on the merits. (D.I. 13, Ex. H to the State's Motion to Affirm in No. 270,2001.)

> FN2. For ease of discussion, the Court will refer to Elliott's present ineffective assistance claim in this manner.

When Elliott did raise his ineffective assistance/DNA argument in his second post-conviction motion, the Superior Court denied the claim as procedurally barred under Rule 61(i)(2). Specifically, Elliott's failure to raise the issue in the first post-conviction motion barred him from raising it in his second post-conviction motion.[FN3] (D.I.13, Ex. A.) On appeal, the Delaware Supreme Court affirmed this decision, stating that "[t]o the extent Elliott's motion included claims that were not made in his previous postconviction motion, the motion was procedurally barred as repetitive [under Super. Ct.Crim. R. 61(i)(2) ]." *Elliott v. State,* No.270, 2001, Order at ¶ 4 & n. 5 (Del. Aug. 23, 2001).

> FN3. The Superior Court also concluded that Elliott's claim did not satisfy the "interest of justice" exception to procedural default. (D.I. 13, Ex. A to State's Motion to Affirm in No. 270,2001.)

*4 By applying the procedural bar of Rule 61, the Delaware Supreme Court articulated a "plain statement," under *Harris v. Reed,* 489 U.S. 255, 263-64 (1989), that its decision rested on state law grounds. *See Ylst v. Nunnemaker,* 501 U.S. 797 (1991). This Court has repeatedly held that Rule 61(i)(2) constitutes an independent and adequate state

procedural rule precluding federal habeas review. *Kirk v. Carroll,* 243 F.Supp.2d 125, 145 (D.Del.2003); *Maxion v. Snyder,* 2001 WL 848601, at *12 (D.Del. July 27, 2001); *Carter v. Neal,* 910 F.Supp. 143, 149-50 (D.Del.1995). As such, federal habeas review of this claim is precluded unless Elliott establishes cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will result if the Court refuses to hear his claim. *See* 28 U.S.C. § 2254(a); *Coleman v.. Thompson,* 501 U.S. 722, 750 (1991); *Caswell v. Ryan,* 953 F.2d 853, 860-61 (3d Cir.1992).

Elliott alleges that, during the plea colloquy, the Delaware Superior Court and his attorney told him he could not appeal his guilty plea. He contends that this information prevented him from including the ineffective assistance/DNA argument in his first post-conviction motion.[FN4] (D.I.29.) In effect, Elliott is asserting that his counsel's statement and the Superior Court's statement regarding his right to appeal were an external factor constituting cause for his procedural default. However, Elliott has failed to demonstrate how this statement regarding an appeal prevented him from raising the ineffective assistance/DNA argument in his first post-conviction motion.

> FN4. To the extent Elliott argues that these statements constitute cause for his failure to raise this claim on appeal, the argument fails. In Delaware, ineffective assistance of counsel claims should not first be brought on direct appeal, but rather, in a Rule 61 motion for post-conviction relief. *Williams v. State,* 682 A.2d 627, at * *3 (Del.1996) (collecting cases). Any information regarding his right to appeal had no effect on his ability to bring a Rule 61 motion.

His contention is even more puzzling because the statement regarding his right to appeal obviously did not prevent him from filing the post-conviction motion in the first place. Moreover, despite his repetitive assertions that he is not a lawyer and does not understand the law, a lack of legal knowledge does not constitute cause for procedural default.[FN5] *See Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) ("cause cannot be based on the mere inadvertence of the petitioner ... to take an appeal"); *Desmond v. Snyder,* 1999 WL 33220036, at *19 (D.Del. Nov. 16, 1999).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. To the extent Elliott is alleging his counsel's ineffective assistance as cause for his failure to raise the issue in his first post-conviction motion, this contention fails. Ineffective assistance of counsel can only constitute cause for a procedural default if it rises to the level of a Sixth Amendment violation. *See Murray v. Carrier,* 477 U.S. at 488. Elliott had no right to representation during his post-conviction proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). His counsel's alleged failure to inform him of his right to raise issues in a Rule 61 motion therefore cannot establish cause for his procedural default. *Coleman,* 501 U.S. at 152; *Cristin,* 281 F.3d at 420.

Further, Elliott has not demonstrated actual prejudice resulting from his counsel's failure to provide DNA testing.[FN6] He argues that prejudice is shown by the fact that he would not have pled guilty if his attorney had done the DNA testing because such testing would have established his innocence. *See generally Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (in a guilty plea context, petitioner must demonstrate how the errors of counsel undermined his decision to plead guilty). However, this conclusory statement does not demonstrate actual prejudice. "Mere allegations by a defendant that he would have ple[d] differently and insisted on going to trial are insufficient to establish prejudice." *Werts v. Vaughn,* 228 F.3d at 193; *Thomas v. Snyder,* 2001 WL 1297812, at *4 (D.Del. Oct. 3, 2001).

FN6. Upon finding that Elliott has not established cause for his procedural default, the Court need not reach the question of whether he has shown any actual prejudice. *See Coleman,* 501 U.S. at 752, 757; *Smith v. Murray,* 477 U.S. 527, 533 (1986). However, because Elliott has submitted numerous documents addressing the procedural default issue, the Court will address the prejudice issue.

*5 Moreover, the fact that Elliott derived substantial benefits from pleading guilty increases his burden in establishing prejudice. In exchange for his plea, the State dropped three charges: possession of a deadly weapon during the commission of a felony, possession of a deadly weapon by a person prohibited, and misdemeanor theft. If a jury convicted Elliott of these charges, he would have faced a jail term significantly greater than his eight year sentence.

Finally, to the extent Elliott argues that his attorney's failure to provide DNA testing prejudiced him because he entered his plea involuntarily, this argument fails. Elliott himself acknowledges that he knew prior to accepting the plea that his counsel had not conducted DNA testing on the weapon. However, he still decided to plead guilty. The Superior Court engaged in a thorough plea colloquy, affording Elliott numerous occasions to reject the plea agreement. If, as Elliott now claims, he was dissatisfied with his attorney's failure to provide DNA testing, he could have mentioned this fact at the plea colloquy. Yet, Elliott told the Superior Court that he was satisfied with his legal representation. (D.I. 13, Ex. F at 6 to State's Motion to Affirm in No. 270,2001.) Elliott is bound by these statements made under oath in open court. *See Blackledge v. Allison,* 431 U.S. 63, 73-4 (1997); *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir.1991).

The only other way for the Court to excuse Elliott's procedural default is under the "miscarriage of justice exception." Pursuant to this exception, a court may excuse a procedural default if the petitioner demonstrates actual innocence. *See Murray,* 477 U.S. at 496. However, the "miscarriage of justice" exception applies only in "extraordinary cases." *See Coleman,* 501 U.S. at 749.

As explained above, the record demonstrates that Elliott knowingly and voluntarily entered his guilty plea. Indeed, Elliott specifically stated that he did, in fact, assault the victim with a knife. (D.I. 13, Ex. F at 5 to State's Motion to Affirm in No. 270,2001.) This "[s]olemn declaration in open court carr[ies] a strong presumption of verity" which is not overcome by Elliott's unsubstantiated claims of actual innocence. *Blackledge,* 431 U.S. at 73-74. As such, his assertions fail to demonstrate that the Court's refusal to review this claim will result in a fundamental miscarriage of justice.

In short, the Court concludes that Elliott has failed to provide a reason excusing his procedural default. Accordingly, his federal habeas petition will be dismissed as procedurally barred.

## V. MOTIONS

In addition to his habeas petition, Elliott has filed three motions: a letter motion for the appointment of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

counsel and DNA testing, a motion for summary judgment, and a motion for issuance of the writ pursuant to 28 U.S.C. § 2243. (D.I. 37; D.I. 47; D.I. 55.)

It is well settled that a petitioner does not have a Sixth Amendment right to counsel in a habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). However, a district court may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c), 28 U.S.C. *foll.* § 2254. As explained above, the Court is dismissing Petitioner's § 2254 petition. In these circumstances, the "interests of justice" do not require the appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). Thus, the Court will deny this motion, and his concurrent request for DNA testing, as moot.

*6 Similarly, because the Court has reviewed Elliott's habeas petition and has concluded that federal habeas review is procedurally barred, the Court will deny Elliott's motions for summary judgment and for issuance of the writ under 28 U.S.C. § 2243 as moot.

## VI. CERTIFICATE OF APPEALABILITY

Finally, this Court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner establishes a "substantial showing" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Additionally, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."

*Id.*

The Court concludes that Elliott's claims are procedurally barred. Reasonable jurists would not find this conclusion unreasonable. Consequently, Elliott has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

## VII. CONCLUSION

For the foregoing reasons, the Court will deny Elliott's § 2254 petition, and finds no basis for the issuance of a certificate of appealabilty. An appropriate order will follow.

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:
1. Curtis Ellliot's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.1.) is DENIED.
2. Curtis Elliott's motion for the appointment of counsel and DNA testing is DENIED as moot. (D.I.37.)
3. Curtis Elliott's motion for summary judgment is DENIED as moot. (D.I.47.)
4. Curtis Elliott's motion for issuance of the writ under 28 U.S .C. § 2243 is DENIED as moot. (D.I.55.)
5. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

D.Del.,2004.
Elliott v. Kearney
Not Reported in F.Supp.2d, 2004 WL 724958 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2006, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on November 6, 2006, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

Christopher J. Davis
SBI No. 225275
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us